904 A.2d 432

**In re MARIA P.**

**No. 89, Sept. Term, 2005.**

Court of Appeals of Maryland.

Aug. 1, 2006.

662

Katherine P. Rasin and Julia Doyle Bernhardt, Assistant Public Defenders (Nancy S. Forster, Public Defender, Baltimore), on brief, for petitioner.

Nancy C. Hopkins, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General of Maryland, Baltimore), on brief, for respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

GREENE, J.

This matter originated in the Circuit Court for Montgomery County, sitting as a juvenile court, where Montgomery County Department of Health and Human Services ("the Department") filed a petition alleging that Maria P. ("Gabby"),[1] age 12, was a child in need of assistance ("CINA") pursuant to Md.Code (1973, 2002 Repl.Vol.), § 3–801(f) of the Courts and Judicial Proceedings Article.[2] At the CINA adjudicatory

---

1. The record indicates that Maria Gabriella P. is known by the nickname "Gabby."

2. Section 3–801 of the Courts and Judicial Proceedings Article defines a "child in need of assistance" as follows:

(f) "Child in need of assistance" means a child who requires court intervention because:

(1) The child has been abused, has been neglected, has a developmental disability, or has a mental disorder; and

hearing,[3] Gabby's mother, Matrida R. ("Petitioner"), was excluded from the hearing because of the court's concern that Gabby might not testify truthfully in the presence of her mother. Ultimately, the court declared Gabby a CINA and placed her in the care and custody of the Department.[4] Petitioner appealed to the Court of Special Appeals and that court affirmed, in an unreported opinion, the judgment of the Circuit Court. Petitioner filed a petition for writ of certiorari, which we granted. *In re Maria P.*, 390 Md. 90, 887 A.2d 655 (2005).

Petitioner presents three questions for our review,[5] which we have combined and recast into two questions:

---

(2) The child's parents, guardian, or custodian are unable or unwilling to give proper care and attention to the child and the child's needs.

(g) "CINA" means a child in need of assistance.

Allegations that a child is a CINA must be proven by a preponderance of the evidence. Md.Code (1973, 2002 Repl.Vol.), § 3-817(c) of the Courts and Judicial Proceedings Article.

3. An adjudicatory hearing is a hearing under Subtitle 8 of the Courts and Judicial Proceedings Article "to determine whether the allegations in the [CINA] petition, other than the allegation that the child requires the court's intervention, are true." Md.Code (1973, 2002 Repl. Vol. & 2005 Supp.) § 3-801(c) of the Courts and Judicial Proceedings Article.

4. At the time of the alleged abuse at issue, Gabby was living in Silver Spring, Maryland, with her mother, Matrida R., her stepfather, Victoriano, her stepbrother, two half brothers, and her stepfather's mother. There was also a boarder in the home, H. Goldames, who rented a bedroom on the first floor.

5. Petitioner's original questions presented were:
1. May a juvenile court exclude a parent, who is a party to a CINA proceeding, but who is not alleged to have committed any abuse or neglect, from that proceeding during her child's testimony, absent compelling circumstances?
2. Did the juvenile court commit prejudicial error in excluding petitioner from the courtroom during her child's testimony, without hearing any evidence in support of exclusion, and without making any findings in support of exclusion, other than that exclusion of her mother might prevent the child from being "bashful?"
3. Was the evidence sufficient to find Gabby a child in need of assistance where the trial court found that petitioner, who complied with the safety plans and was willing and able to give Gabby proper

1. During a CINA adjudicatory hearing, may a juvenile court exclude a parent from the courtroom during her child's testimony without hearing any evidence, or making any findings, in support of exclusion?

2. Was the evidence sufficient to find Gabby a CINA?

We answer the first question in the negative, and remand this matter to the juvenile court for further proceedings not inconsistent with this opinion. In light of our resolution of Petitioner's first question, we decline to reach her second issue.

## FACTS

Gabby was born in 1992.[6] On or about October 20, 2004, Gabby told her mother that, a week before, she was on her way to school when four men abducted, drugged and raped her. Gabby's mother took her to school to seek assistance from the authorities. Detective Gary Irwin, of the Montgomery County Police Department, Pedophile Section, responded to the call from Gabby's school regarding the allegations. Det. Irwin characterized Gabby as "lackadaisical" during his initial interview with her, and questioned the veracity of her allegations. Subsequently, Gabby was brought to Shady Grove Hospital for an examination where it was determined that she was approximately six weeks pregnant.

The next day, Gabby was interviewed a second time and again stated that her allegations were true. When confronted with inconsistencies in her story, Gabby revealed that, actually, she had been raped by her stepfather in September 2004. A child victim coordinator, Darryl Leach, was called to interview Gabby when it was determined that her abuse allegations were against a family member. Larissa Holstead, of Montgomery County Child Welfare Services, was subsequently

---

care and attention, was "not to be blamed," should be "commended," and "has done almost everything she can do?"

**6.** The Court of Special Appeals incorrectly stated the year of Gabby's birth as 1982.

called in to observe Leach's interview with Gabby. When Holstead told Gabby that her mother needed to be told about the allegations, Gabby indicated that she did not want to be present when Holstead informed Gabby's mother.

Holstead told Petitioner that she needed to speak to Gabby's stepfather, Victoriano, and asked if there was a phone number at which he could be contacted. Petitioner stated that she did not have his phone number, but while left alone briefly, Petitioner called Victoriano and was heard speaking to him about the allegations when Holstead returned to the room. Petitioner continued to insist that she did not know Victoriano's work number.[7]

Petitioner was then taken in to see Gabby. Holstead advised Petitioner that it was essential that she be supportive of Gabby and demonstrate a belief in her allegations, and Holstead asked Petitioner to refrain from asking Gabby why she did not tell Petitioner sooner. Notwithstanding this warning and upon seeing Gabby, Petitioner immediately asked Gabby why she did not tell her about the incident earlier. Holstead stated that Gabby then began to get upset and cry, so the Petitioner and Gabby were separated. Due to her concern that Petitioner did not believe Gabby, Holstead told Petitioner that she did not feel comfortable sending Gabby home. Petitioner expressed concern about Gabby returning home with her; therefore, Holstead suggested that Petitioner place Gabby in foster care overnight, until a protective order could be obtained. Petitioner agreed to this arrangement.

Subsequently, Gabby's pregnancy was terminated, and Petitioner obtained a temporary protective order[8] at that time. With her stepfather no longer staying in the home, Gabby

---

**7.** It was at this point that Holstead first felt that Gabby's mother doubted the veracity of Gabby's story. Petitioner asked Holstead why Gabby would not have told her sooner, and then indicated that, if the incident had actually occurred, "Gabby would have screamed and woken up her brothers."

**8.** *See* Md.Code (1984, 2004 Repl.Vol.) § 4–505 of the Family Law Article.

returned to her mother's care with a safety plan in place. On October 29, Petitioner returned to court to obtain a permanent protective order, but refused to do so once she discovered that Victoriano could be arrested if he failed to appear for the protective order hearing. Instead, Petitioner signed another safety plan stating that she would continue to prohibit Victoriano from contacting Gabby. Sometime over the next week, Gabby overheard Petitioner telling relatives that she had forgiven Victoriano. Gabby then went outside and laid under a parked truck, refusing to come out from under the truck for 30 minutes. As a result of this incident, Petitioner told Holstead that she was concerned that she could not handle Gabby. At a subsequent November 2 meeting at her home, Petitioner indicated that she wanted to explore out-of-home placements for Gabby, either with a relative or in foster care.

Holstead and a community service aide met with Petitioner again on November 9 to talk about potential placements with relatives. Concerned that she was still unable to control Gabby and that Gabby might try to hurt herself, Petitioner suggested placement with Petitioner's brother in Georgia. On this same day, Petitioner discussed the "intended action letter" that she had received in the mail from Holstead that identified Victoriano as Gabby's abuser. Petitioner asked whether she could appeal such a finding, and was upset when she was informed that she could not. Upon returning to her office from the meeting, the community service aide discovered that she had a message from Petitioner indicating that Gabby had disclosed that she had been raped by Goldames, the boarder in the home. The next day, Holstead met with Gabby who indicated that, at some point before she was raped by her stepfather, she had been raped by Goldames.

As a result of Gabby's new allegations, Holstead met with Petitioner, informing her that Gabby would not be allowed to return home unless Goldames left the house. Petitioner told Holstead that she did not think that she could ask Goldames to leave because he had already paid rent through the end of the month, and she did not have the money to refund the rent. Petitioner also indicated that it might be helpful to keep

Goldames in the home to "know his whereabouts." When Holstead again told Petitioner that Gabby could not return if Goldames remained in the house, Petitioner indicated that she would be willing to place Gabby in voluntary foster care. Gabby was placed in foster care that day, and was still in foster care when the CINA hearing occurred. Petitioner testified that the next time she saw Goldames, the day after her meeting with Holstead, she told him that he had to leave the house. It is unclear from the record whether Goldames actually left at that time.

Soon after Gabby was placed in foster care, her foster mother contacted Holstead to indicate that Gabby had recanted the allegations against her stepfather. Holstead, concerned that Gabby was being pressured to recant by her mother, filed a CINA petition in juvenile court on November 16, 2004, and an adjudicatory hearing was held on the CINA petition on December 28, 2004.[9] Gabby testified that, notwithstanding her mother's assurances, she did not think that her mother believed her allegations. Gabby stated that she was uncertain about wanting to return home, and expressed concerns that her grandmother was angry with her. Gabby testified that she was "doing okay" in foster care, and enjoyed her new middle school. Holstead then testified that she thought Petitioner's support of Gabby was "[t]enuous, at best," noting Petitioner's focus on the DNA testing that could indicate that Victoriano was not the father of Gabby's child. Petitioner then testified that, since she learned of Gabby's allegations, Victoriano had never been in the home at the same time as Gabby, and Petitioner had not spoken to him since October 21. Petitioner also testified that Gabby and her grandmother have a good relationship that has not changed since Gabby's allegations. It was later determined through DNA testing, after the CINA hearing, but prior to the deci-

---

9. Gabby's mother was excluded from the courtroom during Gabby's testimony. Additional facts in connection with Petitioner's exclusion will be added *infra* in our discussion of Issue I.

sion of the intermediate appellate court, that Victoriano was not the father of Gabby's baby.

At the conclusion of the evidence, the court found that Gabby's pregnancy at age 12 clearly constituted abuse. The court commended Petitioner for doing "almost everything she [could] do" in Gabby's situation, but found that Petitioner was unable or unwilling to give Gabby the proper care and attention that she needs. The court found Gabby to be a CINA and indicated that she should be kept in her current foster home. The court also ordered supervised visitation for Petitioner at a minimum of once a week.

## DISCUSSION

### I.

During a CINA adjudicatory hearing, may a juvenile court exclude a parent from the courtroom during her child's testimony without hearing any evidence, or making any findings, in support of exclusion?

During the CINA adjudicatory hearing in the instant case, the Department made a motion to close the courtroom to everyone except court personnel, Gabby's counsel, certain social workers, and Petitioner's counsel. The Department specifically requested to exclude Petitioner from the courtroom during Gabby's testimony. Petitioner's counsel objected, and the hearing judge granted the Department's request to exclude Petitioner, stating:

Thank you, I will grant the County's request to exclude the mother from the courtroom during and only during the period of direct and cross-examination of the daughter. The heart of the allegations here is this young lady has been raped and that the allegation of the County is that her mother has not responded appropriately, and therefore, there may be some influence on this girl of tender years, age 12, with her mother in the courtroom and I think it would be in the best interest of the child if she not be

subjected to any type of influence that may cause her to shade her testimony, being bashful.

Petitioner contends that the juvenile court abused its discretion in excluding her from the CINA proceedings during Gabby's testimony.

In affirming the juvenile court, the intermediate appellate court cited Maryland Rule 11–110(b) in support of its holding that the juvenile court had the discretion to exclude Petitioner from the courtroom during Gabby's testimony. The Court of Special Appeals noted that the juvenile court's decision to exclude Petitioner was evidently based on its knowledge of Holstead's concern that Petitioner did not believe Gabby and might have pressured her to change her story. The intermediate appellate court also took into consideration that the juvenile court was concerned about ensuring an environment in which Gabby was most likely to testify truthfully.

■ Maryland Rule 11–110(b) states in pertinent part:

Place of Hearing. A hearing may be conducted in open court, in chambers, or elsewhere where appropriate facilities are available. *The hearing* may be adjourned from time to time and, except as otherwise required by Code, Courts Article, § 3–812, *may be conducted out of the presence of all persons except those whose presence is necessary or desirable.* If the court finds that it is in the best interest of a child who is the subject of the proceeding, the presence of the child may be temporarily excluded except when the child is alleged to have committed a delinquent act.

(Emphasis added.) Md.Code (1973, 2002 Repl.Vol.), § 3–810(b)(1) of the Courts and Judicial Proceedings Article also addresses the juvenile court's ability to exclude certain individuals from a hearing:

(b)(1) In any proceeding in which a child is alleged to be in need of assistance or in any voluntary placement hearing, the court may exclude the general public from a hearing and admit only those persons having a direct interest in the proceeding and their representatives.

It is clear that a parent is a party to a CINA proceeding [10] and, as such, would be considered a person whose presence is generally necessary under Rule 11–110(b).[11] A CINA proceeding is essentially civil in nature. Md.Code (1973, 2002 Repl.Vol.), § 3–8A–23(a) of the Courts and Judicial Proceedings Article; *In re John P.*, 311 Md. 700, 707, 537 A.2d 263, 267 (1988).

> In concert with courts throughout the country, we have made clear that a party to civil litigation has a right to be present for and to participate in the trial of his/her case. Although we have not, in our previous cases, specifically identified the source of that right, it is clear that the right emanates, at least, from the common law of Maryland, from the due process clause of the Fourteenth Amendment to the U.S. Constitution, from the Maryland equivalent of that clause, Article 24 of the Declaration of Rights, and from Article 19 of the Declaration of Rights. We have also made clear, as have most other courts in the nation, that the right is not absolute-that there are circumstances in which a civil case may proceed without the attendance of a party and, indeed, with the party excluded.

*Green v. North Arundel Hosp. Ass'n*, 366 Md. 597, 618–19, 785 A.2d 361, 373–74 (2001).[12] In *Green*, we summarized our

---

10. Md.Code (1973, 2002 Repl.Vol.), § 3–801(u) of the Courts and Judicial Proceedings Article defines "party" under the subtitles and provides:

> (u)(1) "Party" means:
>   (i) A child who is the subject of a petition;
>   (ii) *The child's parent*, guardian, or custodian;
>   (iii) The petitioner; or
>   (iv) An adult who is charged under § 3–828 of this subtitle.
> (2) "Party" does not include a foster parent.

(Emphasis added.)

11. The Rule also requires that it be considered whether Petitioner's presence was "desirable" under the facts of the instance case. As we shall discuss *infra*, the findings, if any, made by the juvenile court prior to excluding Petitioner from the courtroom during Gabby's testimony, were insufficient to adequately determine the effect of Petitioner's presence during Gabby's testimony.

12. *Green* involved a medical malpractice action where the plaintiff was severely injured while receiving care in an emergency room and sued

review of the exclusion of parties in numerous states, noting that "what emanates from these cases is that there is a right of presence, that the right is not absolute, and that a determination of whether exclusion of a party constitutes sufficient prejudice, either presumed or actual, to warrant a new trial depends, to some extent, on the circumstances." *Id.* at 620, 785 A.2d at 375.

Petitioner argues that the right to due process encompasses a parent's right to be present during his or her child's testimony during a CINA adjudicatory proceeding. Judge Cathell, then writing for the Court of Special Appeals, provided a detailed framework for the consideration of due process in connection with parental rights in *Wagner v. Wagner,* 109 Md.App. 1, 674 A.2d 1 (1996), *cert. denied, Wagner v. Wagner,* 343 Md. 334, 681 A.2d 69 (1996): [13]

---

defendants, North Arundel Hospital Association and two doctors employed there. *Green,* 366 Md. at 601, 785 A.2d at 364. We considered whether the trial court erred in precluding Green, who was essentially in a motionless vegetative state as a result of his injury, and unable either to communicate or to understand the proceeding, from being brought into the courtroom for a period during the two-week trial as to liability, to be exhibited to the jury "to demonstrate his current condition." *Id.* at 602, 785 A.2d at 364. Ultimately, we held that there is a right of presence even in the liability phase of a bifurcated trial, and it cannot be denied solely because the party's physical appearance may garner jury sympathy. *Id.* at 626, 785 A.2d at 378. The right of presence is not absolute, "and must be balanced against the defendant's equivalent right to a fair trial." *Id.*

While the *Green* case provides some guidance on the various perspectives of the states on the issue of excluding a party from a civil proceeding, we limited our holding to the facts of Green's case. The facts of the instant case are inapposite. As we shall discuss, despite being civil in nature, the particular concerns of a CINA proceeding, with regard to parental rights and the best interests of the child, are what set it apart from a typical civil case. Those concerns must be taken into consideration when reviewing a parent's exclusion from a CINA proceeding.

**13.** While the analysis of *Wagner* is instructive, it is factually inapposite to the instant case. In that child custody case, the mother was absent from a *pendente lite* hearing because she had absconded to California, but her counsel was present and she was presumed to know of the proceedings. There were also additional facts relevant to the volatile relationship of the parties in *Wagner* that necessitated prompt action for

Article 24 of Maryland's Declaration of Rights states: "That no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the Land." Just what process is due is determined by an analysis of the particular circumstances of the case, including the functions served and interests affected. *Techem Chemical Co. v. M/T Choyo Maru, 416 F.Supp.* 960, 968 (D.Md.1976).... Indeed, it is sufficient if there is at some stage an opportunity to be heard suitable to the occasion and an opportunity for judicial review at least to ascertain whether the fundamental elements of due process have been met. *Burke v. Fidelity Trust Co.,* 202 Md. 178, 188, 96 A.2d 254 (1953). Moreover, with respect to legal issues, due process does not even necessarily require that parties be given an opportunity to present argument. *Blue Cross of Maryland, Inc. v. Franklin Square Hosp.,* 277 Md. 93, 103–04, 352 A.2d 798 (1976).

Due process, thus, is a flexible concept that calls for such procedural protection as a particular situation may demand. *International Caucus of Labor Comm. v. Maryland Dep't of Transport.,* 745 F.Supp. 323, 329 (D.Md.1990); *Department of Transp. v. Armacost,* 299 Md. 392, 416, 474 A.2d 191 (1984), *rev'd on other grounds,* 311 Md. 64, 532 A.2d 1056 (1987); *Attorney Grievance Comm. v. Reamer,* 281 Md. 323, 333, 379 A.2d 171 (1977); *Lomax v. Comptroller of the Treasury,* 88 Md.App. 50, 57, 591 A.2d 1311 (1991); *Vavasori v. Commission on Human Relations,* 65 Md.App. 237, 245, 500 A.2d 307 (1985), *cert. denied,* 305 Md. 419, 504 A.2d 1152 (1986). It does not require procedures so comprehensive as to preclude any possibility of error. *International Caucus,* 745 F.Supp. at 329–30. Stated another way, due

---

the benefit of the children. In the instant case, the mother was present at the hearing prior to being excluded. In contrast, the mother in *Wagner* was not present because she was voluntarily absent, and not, as in the instant case, absent because of the alleged effect of her presence on a testifying child.

process merely assures reasonable procedural protections, appropriate to the fair determination of the particular issues presented in a given case. *See generally Plato v. Roudebush,* 397 F.Supp. 1295, 1310 (D.Md.1975)[.] Therefore, the asserted denial of due process is to be tested by an appraisal of the totality of the facts in a given case. *Betts v. Brady,* 316 U.S. 455, 462, 62 S.Ct. 1252, 1256, 86 L.Ed. 1595 (1942). Notably, there is no requirement that actual prejudice be shown before denial of due process can be established. *Town of Somerset v. Montgomery County Bd. of Appeals,* 245 Md. 52, 66, 225 A.2d 294 (1966).

Once it is determined that an interest is entitled to due process protection, the pertinent inquiry then becomes what process is due, a determination that requires consideration and accommodation of both government and private interests; a balancing of the various interests at stake. *See Pitsenberger v. Pitsenberger,* 287 Md. 20, 30, 410 A.2d 1052, *appeal dismissed,* 449 U.S. 807, 101 S.Ct. 52, 66 L.Ed.2d 10 (1980). Plainly stated, due process is not to be evaluated in a vacuum. Its purpose is to assure basic fairness of procedure and, if departure from procedure results in unfairness, it may be said to deny due process; if no unfairness results, there is no denial of due process. *Moss v. Director, Patuxent Instit.,* 32 Md.App. 66, 74, 359 A.2d 236 (1976), *rev'd on other grounds,* 279 Md. 561, 369 A.2d 1011 (1977).

*Wagner,* 109 Md.App. at 11–12, 674 A.2d at 23–25 (footnote omitted) (some citations omitted).

■■■ We turn now to the instant case.[14] It is well-established that a parent's interest in raising a child is a fundamental right. *In re Yve S.,* 373 Md. 551, 566–58, 819 A.2d 1030, 1039–40 (2003)(quoting *In re Mark M.,* 365 Md. 687, 705, 782 A.2d 332, 342–43 (2001)). Equally understood is the principle that a parent's fundamental right is not absolute, and is subject to the best interests of the child standard. *Id.* at 568–69, 819 A.2d at 1040–41 (citation omitted). Petitioner

---

14. The circuit court's CINA adjudication will not be set aside unless clearly erroneous. Md. Rule 8–131(c).

in the instant case clearly has a liberty interest in the care and custody of her child, and when, as in a CINA proceeding, a state seeks to change the parent-child relationship, "the due process clause is implicated." *Wagner,* 109 Md.App. at 25, 674 A.2d at 12–13 (citing *Williams v. Rappeport,* 699 F.Supp. 501, 505 (D.Md.1988), *aff'd sub nom. Williams v. Dvoskin,* 879 F.2d 863 (4th Cir.), *cert. denied,* 493 U.S. 894, 110 S.Ct. 243, 107 L.Ed.2d 193 (1989)) (citation omitted).

Having determined that Petitioner's interest is entitled to due process protection, we next focus our analysis on what process is due, and in doing so, balance the consideration and accommodation of both the Department's and Petitioner's interests at stake. In addition, we note that we review Petitioner's asserted denial of due process by an appraisal of the totality of the facts of the case. One of the Department's many goals in a CINA proceeding is to determine the best interests of the child and act according to those interests. Petitioner is a parent and party to the action, with a fundamental interest in the care and welfare of her child.

The motion to exclude Petitioner occurred immediately after the parties' opening statements but prior to any testimony on the part of Holstead or another social worker familiar with the case. In support of its decision, the juvenile court noted that the proceeding focused on Gabby's allegations, and "that the allegation of the County is that her mother has not responded appropriately, and therefore, there may be some influence on" Gabby due to her age. The juvenile court also found that it was in the best interests of Gabby "not [to] be subjected to any type of influence that may cause her to shade her testimony." We hold that the juvenile court abused its discretion in excluding Petitioner from the hearing without conducting any inquiry as to the reasons for Petitioner's exclusion. There is no indication on the record that the hearing judge considered Petitioner's due process rights. No testimony was placed on the record, and no inquiries were made of the Department as to the specific reasons for Petitioner's exclusion during Gabby's testimony. In this situation,

we are unable to discern the judge's exercise of discretion if he or she does not state, or there does not exist, on the record, the factual basis for his or her decision.

■■ Our decision does not imply that a juvenile court may never exclude a parent during the testimony of a child in a CINA proceeding, as Rule 11–110(b) clearly provides the juvenile court with the discretion to conduct a hearing outside the presence of all persons except those whose presence is necessary or desirable. Notwithstanding, we note that the juvenile court's discretion to exclude certain individuals from a juvenile proceeding is not unlimited and must be exercised in accord with purposes for which it was given and within applicable constitutional limitations. *Baltimore Sun Co. v. State*, 340 Md. 437, 456–57, 667 A.2d 166, 175–76 (1995). Despite the informal nature of proceedings in juvenile court, "the rules of practice, of procedure, of evidence, and standards of fairness must be observed." *In re Johnson*, 254 Md. 517, 524, 255 A.2d 419, 422–23 (1969)(citing *In re Fletcher*, 251 Md. 520, 248 A.2d 364 (1968)). The rules of evidence contained in Title 5 of the Maryland Rules apply to CINA adjudicatory hearings. Md.Code (1972, 2002 Repl. Vol.) § 3–817(b) of the Courts and Judicial Proceedings Article. *See* In re Ashley E., 158 Md.App. 144, 854 A.2d 893 (2004), *cert. granted*, 383 Md. 569, 861 A.2d 60, *aff'd*, 387 Md. 260, 874 A.2d 998 (2005) (stating that, under the Maryland Rules, "a juvenile court in a disposition hearing in a CINA case has discretion not to strictly apply the Rules of Evidence [but that] is not the case in an adjudicatory proceeding in a CINA case . . . [where] the Rules of Evidence 'shall apply.' ").

■ Maryland Rule 5–615(a) provides that, upon the request of a party made before testimony begins, "the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses." Excepted from the rule permitting the exclusion of witnesses is "a party who is a natural person." Md. Rule 6–615(b)(1). "[I]t is clear that the right [to be present for and to participate in the trial of one's case] emanates . . . from the common law of Maryland, from the due

process clause of the Fourteenth Amendment to the U.S. Constitution, from the Maryland equivalent of that clause, Article 24 of the Declaration of Rights, and from Article 19 of the Declaration of Rights." *Green v. North Arundel Hosp. Ass'n, Inc.,* 366 Md. 597, 618, 785 A.2d 361, 373 (2001). This right, however, is not absolute, and "there are circumstances in which a civil case may proceed without the attendance of a party and, indeed, with the party excluded." *Id.* at 618–19, 785 A.2d at 373–74. The determination of whether the exclusion of a party constitutes sufficient prejudice, either presumed or actual, to warrant a new trial depends, to some extent, on the circumstances. *Id.* at 620, 785 A.2d at 375. We stated in *Green* that the focus of our analysis should not just hinge upon the exclusion of a party from the proceedings, but "why the exclusion was prejudicial." *Id.* at 620–21, 785 A.2d at 375.

The procedure in the instant case resulted in the exclusion of Petitioner based merely on the Department's allegation that Petitioner would unduly influence Gabby's testimony. To exclude Petitioner on the basis of a brief mention of the Department's allegations alone resulted in unfairness and prejudice to Petitioner, and thus denied her due process. Petitioner was unable to confer with her attorney during Gabby's testimony, and was only permitted by the court to confer with her attorney before cross-examination of Gabby. Though Gabby's testimony was recorded, there is no indication from the record that Gabby's recorded testimony was provided to Petitioner when she conferred with her attorney. This is inconsistent with the practice in Maryland custody cases of providing to the excluded party a recorded copy of a child's interview that occurs out of the presence of a party. *See Shapiro v. Shapiro,* 54 Md.App. 477, 480, 458 A.2d 1257, 1259 (1983) (citing *Marshall v. Stefanides,* 17 Md.App. 364, 369, 302 A.2d 682, 685 (1973)) ("In all cases [where a judge interviews a child out of the presence of the parties], unless waived by the parties, the interview must be recorded by a court reporter and immediately following the interview its content shall be made known to counsel and the parties by means of the court

reporter's reading of the record to them."). Under the facts of the instant case, it was an abuse of discretion for the juvenile court to exclude Petitioner from the courtroom during Gabby's testimony without making any finding on the record as to the factual basis for such an action. Balancing the considerations of both the Department and Petitioner, consideration must be given to Petitioner's right to due process.

We hold that the juvenile court abused its discretion in excluding Petitioner from the proceedings without making any specific factual finding as to the propriety of her exclusion. As this error was not harmless, we remand the matter to the juvenile court for further proceedings not inconsistent with this opinion. *See In re Yve S.,* 373 Md. at 586, 819 A.2d at 1051 (quoting *Davis v. Davis,* 280 Md. 119, 122–26, 372 A.2d 231, 232–34 (1977)(some internal citations omitted)(emphasis added)) ("[I]f it appears that the chancellor [in a child custody hearing] erred as to matters of law, further proceedings in the trial court will ordinarily be required unless the error is determined to be harmless.").

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED AND CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AND TO REMAND THE CASE TO THAT COURT FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY RESPONDENT.**