18 A.3d 944

Joseph **VOLTOLINA**

v.

**PROPERTY HOMES, LLC.**

**No. 54, Sept. Term, 2010.**

Court of Special Appeals of Maryland.

April 29, 2011.

Stephen L. Prevas (Prevas & Prevas, on the brief) Baltimore, MD, for appellant.

Heidi S. Kenny, Cockeysville, MD, for appellee.

Panel: MATRICCIANI, ZARNOCH and J. FREDERICK SHARER (Retired, Specially Assigned), JJ.

MATRICCIANI, J.

On January 10, 2008, appellee, Property Homes, LLC, filed a complaint in the Circuit Court for Baltimore City to foreclose the right of redemption of property generally known as 1250 Hull Street, Baltimore, MD (the "Property"). On February 11, 2009, the court entered judgment foreclosing the right of redemption. Appellant, Joseph Voltolina, moved to reopen the judgment on October 13, 2009. The trial court heard arguments on the motion to reopen and denied it by order entered March 4, 2010. Appellant noted this timely appeal on March 17, 2010.

## QUESTIONS PRESENTED

Appellant presented two questions for our review, which we have consolidated and rephrased:

Did the trial court err when it held that it had jurisdiction over the tax sale foreclosure and that there was no constructive fraud and denied appellant's petition to reopen judgment foreclosing his right of redemption?

For the reasons set forth below, we answer no and affirm the judgment of the circuit court.

## FACTUAL AND PROCEDURAL HISTORY

At all relevant times, appellant was the Property's sole owner.[1] Appellant is a member of the International Longshoreman's Association and is "employed as a 'Checker' when work is available in the Baltimore ports." According to appellant's affidavit, the Property has been his residence all his life, and at the time of these proceedings he lived there

---

1. The Property was originally titled to appellant, his mother, and his grandmother, but the latter two died before these proceedings commenced, so that title apparently passed to appellant by operation of law.

with his father, who was seventy-four years old during (some portion of) the proceedings and who appellant averred "does generally retire to sleep in the early evening hours."

On May 14, 2007, the Baltimore City Director of Finance sold a Tax Sale Certificate for the Property to an entity known as City TSC Holdings, LLC, which subsequently assigned the Certificate to appellee.

On January 10, 2008, appellee filed a complaint in the Circuit Court for Baltimore City to foreclose rights of redemption under Maryland Code (1986, 2007 Repl.Vol.), §§ 14–832 *et seq.* of the Tax–Property Article ("TP" or "Property Tax Article"). The complaint named as defendants appellant, appellant's late grandmother, Anna Tamburo, appellant's late mother, Rosanna Voltolina, "Unknown Owners Of Property Known As 1250 Hull Street," and the Mayor and City Council of Baltimore City.

On January 28, 2008, the clerk of the court for Baltimore City signed and issued a "notice to interested parties," pursuant to Maryland Rule 14–502(b)(3) and at the behest of appellee. Under the case caption, the document states that the object of the proceeding is to secure the foreclosure of all rights of redemption in Property, which had been sold by the Collector of Taxes for Baltimore City and the State of Maryland to appellee. The notice states the complaint alleges, "among other things, that the amount necessary for redemption have not been paid, although more than six (6) months from the date of sale have expired." The document then describes the Property and provides this warning:

If you or the entity that you represent has a recorded interests, claim, lien or judgment regarding the property or its owner, you and our client are hereby notified of the filing of this Complaint and are warned to redeem the property or file an answer to the Complaint on or before the latest of:

a) The expiration date of the period described in the summons or

b) Date specified in the Order of Publication

c) 33 days after the mailing of said Order of Publication [2]

Continuing, the notice warns the reader that "[f]ailure to redeem the property or answer the Complaint may result in a Final Judgment Foreclosing all Rights of Redemption in and as to the property and vesting in the Plaintiff a title, free and clear of all encumbrances." The notice then adds that, "[t]he above notwithstanding . . . a person with a legal interest in the property may redeem at any time until the right of redemption has been finally foreclosed by the actual issuance of a Judgment Foreclosing the Right of Redemption by the Court."

Appellee then began a series of attempts to serve appellant with a summons and via substitute process. On February 15, 2008, a process server hired by appellee visited the Property at 10:17 p.m. There was no response to his knocking, so he left a note with his name and telephone number, along with a request that appellant call him. On February 16, 2008, a Baltimore City Sheriff posted a copy of the notice to interested parties at the Property.

On February 20, 2008, appellee sent appellant an envelope containing a summons and copies of the tax sale certificate, complaint, and initial order of publication. The envelope went by certified mail with restricted delivery and was returned to appellee, unclaimed.

On February 26, 2008, at an undisclosed time, the process server again visited the Property and, after there was no response to his knocking, left another note for appellant with the server's contact information and a request that appellant call. The process server visited the Property once more, sometime on March 19, 2008, with the same outcome. On April 2, 2008, the process server sent a letter to appellant via regular mail, requesting that appellant contact him. On an unspecified date and time, the server called appellant's tele-

---

**2.** The court issued a summons and initial order of publication on January 28, 2008, although the order eventually published issued later, as described below.

phone number at the Property but was unable to speak with appellant.[3]

On June 5, 2008, appellee again sent certified mailings with the same contents as above. One was addressed to appellant with restricted delivery, and two were addressed, respectively, to Rosanna Voltolina and "unknown tenant or occupant," without restricted delivery. All three were returned unclaimed.

The court issued an order of publication on December 10, 2008.[4] Under the case caption at the top, the order states that "the object of this proceeding is to secure the foreclosure of all rights of redemption in the following property described below in the State of Maryland, sold by the Collector of Taxes for Baltimore City and the State of Maryland to the Plaintiff in this proceeding[.]" The order describes the Property and then continues: "The Complaint states, among other things, that the amounts necessary for redemption have not been paid although more than six (6) months and a day from the date of sale has expired." The order then directs appellant to insert a copy of it "in some newspaper having a general circulation in Baltimore City once a week for three (3) successive weeks on or before the 9th day of January, 2009[.]" The order warns "all persons interested in the property to appear in this Court by the 8th day of February, 2009 and redeem the property described above and answer the complaint the Complaint or thereafter a Final Judgment will be entered foreclosing all rights of redemption in the property, and vesting in the Plaintiff a title, free and clear of all encumbrances." The order bears the signature of a judge of the circuit court.

On November 24, 2008, appellee moved for voluntary limited dismissal of Anna Tamburo and the Property's "Unknown

---

**3.** The server's affidavit indicates that he left a voice message requesting a return call, but appellant alleges that the phone never had an answering machine or service.

**4.** The court had issued an order of publication on January 28, 2008, but it was not published and its time expired on February 27, 2008.

Owners." Pursuant to Rule 1–321, appellee mailed copies of its motion to each party via regular mail.

In the meantime, beginning December 12, 2008, appellee published the Order of Publication once per week for three successive weeks.[5] On December 16, 2008, appellee sent copies of the Order of Publication to appellant and "unknown owners" at the Property via certified mail, but they also returned unclaimed.

The court granted appellee's motion for limited dismissal on January 13, 2009. According to appellant, the court clerk's notice of the order of limited dismissal was the first notice that he received, having arrived via regular mail on an unspecified date in "the latter part of January 2009." The document bore the case caption "Property Homes, LLC v. ANNA TAMBU-RO, ET AL." and recited the court's order that "the Defendants, Anna Tamburo and Unknown Owners of the Property: 1250 Hull St, Baltimore, MD 21230, The Unknown Owner's Heirs, Devisees, And Personal Representatives and Their or Any of Their Heirs, Devisees, Executors, Administrators, Grantees, Assigns, Or Successors In Right, Title And Interest, hereby are DISMISSED." Upon receiving the clerk's copy of the order, appellant avers that he sought counsel but "had a difficult time obtaining representation." One attorney he consulted "gave him the informal advice that the case had been dismissed."

On February 3, 2009, appellee filed an affidavit of compliance pursuant to TP § 14–833(a–1), describing its foregoing attempts to serve appellant. The affidavit of compliance includes an affidavit of due diligence sworn by the process server's custodian of records and explaining the attempts made to serve appellant in person, as described above.

On February 11, 2009, the circuit court entered judgment foreclosing all rights of redemption of the Property.

---

**5.** Appellee's affidavit of compliance, filed February 3, 2009, includes a clipping of the notice and a document from The Daily Record Company certifying that fact.

Appellant avers that sometime after the court's February 11, 2009, judgment of foreclosure, he received notice to appear for a status conference scheduled for April 29, 2009.[6] This spurred a second attempt to retain counsel, but according to appellant, "the contact he made indicated that he did not handle tax sale foreclosure cases." That "contact" advised him to attend the status conference, with or without counsel.

On June 15, 2009, the Baltimore City Director of Finance deeded the Property to appellee, who recorded the deed on August 11, 2009. On August 19, 2009, appellee mailed to appellant a notice to vacate, required by TP § 14–836(b)(7), and on August 21, 2009, the circuit court issued appellee a writ of possession of the Property.

At some point after the April, 2009, status conference, the Legal Aid Bureau referred appellant to his first retained counsel. On October 13, 2009, appellant's counsel entered his appearance in this matter and moved to reopen the judgment under TP § 14–845(a), alleging lack of personal jurisdiction and constructive fraud in the proceedings for failure of notice and due process.

The court heard and denied appellant's motion to reopen judgment on February 18, 2010. Appellant noted this timely appeal on March 17, 2010.

### DISCUSSION

### I. Standard of Review

Under TP § 14–804, "[a]ll unpaid taxes on real property shall be, until paid, liens on the real property in respect to which they are imposed from the date they became or become payable[,]" and § 14–808 empowers the tax collector to sell that property to satisfy its lien (within the applicable limitations period). Certain interested parties retain a right to satisfy the lien and redeem the property, but a tax sale purchaser may foreclose those rights after satisfying certain

---

**6.** The notice was dated February 10, 2009, one day before the court's judgment of foreclosure.

requirements, which the Court of Appeals condensed in *Scheve v. Shudder, Inc.*, 328 Md. 363, 370–71, 614 A.2d 582 (1992):

> In summary, the statute requires that: (1) the purchaser must file a complaint that conforms with [TP] § 14–835(a) within two years following the sale; (2) the purchaser must attach the certificate of sale (§ 14–835(b)); (3) the purchaser must attach an affidavit of title search (§ 14–838); (4) the court must issue process and public notice under §§ 14–839 and 14–840, setting out the time after which the right of redemption will be foreclosed. Thereafter, *assuming that due process requirements have been met*, the circuit court may enter a final order under § 14–844.

(Emphasis added.)

A final order under TP § 14–844 can only be reopened "on the ground of lack of jurisdiction or fraud in the conduct of the proceedings to foreclose," and, if within one year of the judgment date, "on the ground of constructive fraud in the conduct of the proceedings." TP § 14–845.

 Failure of procedural due process deprives the court of jurisdiction and so gives grounds to reopen the judgment under TP 14–845. *See CSR, Ltd. v. Taylor*, 411 Md. 457, 475–76, 983 A.2d 492 (2009). "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice[.]" *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950), *accord Griffin v. Bierman*, 403 Md. 186, 197, 941 A.2d 475 (2008).

 However, "[i]t is well settled that due process of law is not violated in application because the interested party did not receive actual notice." *Griffin*, 403 Md. at 206, 941 A.2d 475. "The constitutionality of a particular notice mechanism is not to be judged by its actual success—whether an individual or group is in fact notified—but turns instead on whether the chosen method is 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" L. Tribe, American Constitutional Law § 10–15 at

732–33 (2d ed.1988) (quoting *Mullane*, 339 U.S. at 314, 70 S.Ct. 652), *quoted in Golden Sands Club Condominium, Inc. v. Waller*, 313 Md. 484, 500, 545 A.2d 1332 (1988). "[D]ue process merely assures reasonable procedural protections, appropriate to the fair determination of the particular issues presented in a given case. . . . Therefore, the asserted denial of due process is to be tested by an appraisal of the totality of the facts in a given case." *In re Maria P.*, 393 Md. 661, 675, 904 A.2d 432 (2006).

■ The court may also reopen its judgment for constructive fraud, which has, since *Jannenga v. Johnson*, 243 Md. 1, 220 A.2d 89 (1966), been found where a complainant fails to comply with applicable notice requirements. *Canaj, Inc. v. Baker & Div. Phase III*, 391 Md. 374, 423, 893 A.2d 1067 (2006).

■ We review a decision under TP § 14–845 using the same standard applied to decisions under C.J. § 6–408 and Rule 2–535(b). *Canaj*, 391 Md. at 401, 893 A.2d 1067. Therefore, we will not overturn the ruling unless it appears from the record that the trial court erred as a matter of law or abused its discretion in denying the motion. *Id.*

## II. Analysis

■ As an initial matter, appellee argues that any dispute over sufficiency of service is immaterial because appellant received actual notice of the proceedings, and that it was only his lack of diligence in retaining counsel that deprived him of an opportunity to be heard. While there is no dispute here that the order of limited dismissal spurred appellee to at least inquire about representation in the proceedings, we are persuaded by appellant's argument that a non-attorney receiving such a limited order of dismissal could easily misinterpret its contents and receipt to mean that the case against him or her had been dismissed.[7] We therefore must determine whether notice was otherwise satisfactory.

---

7. As noted, *supra*, appellant admits that he also received notice of a status conference, but the conference was set for several months after

### A. *Notice in Tax Sale Foreclosures*

Before we take up appellant's points of error, it behooves us to work through the scattershot notice provisions of the Property Tax Article and the Maryland Rules. The briefest version of their rather incestuous origins is as follows: constitutional due process begat Rules 2–121 and 2–122, which were modified and enacted through TP § 14–836, 14–839, and 14–840, which begat Rule 14–502 and 14–503, which imposes further modifications while also mandating service "in accordance with" Rules 2–121 and 2–122, depending on the circumstances. Not surprisingly, the scheme's circular construction causes inherent tension that threatens to tear it apart at the canonic seams.

We see signs of trouble ahead as soon as we search for the proper form and contents of substitute service. When we do, we find practically identical notice content requirements in three different places. First, Rule 2–122(c) requires the following:

> The notice shall be signed by the clerk and shall include the caption of the case; describe the substance of the complaint and the relief sought; inform the defendant of the latest date by which the response is to be filed; warn the defendant that failure to file the response within the time allowed may result in a judgment by default or the granting of the relief sought; and contain any other information required by the court.

Similarly, Rule 14–502(b)(3) requires

> ... notice setting forth (A) the substance of the complaint and the relief sought, (B) a description of the property in substantially the same form as the description appearing on the collector's tax records, (C) the time within which a defendant must file an answer to the complaint or redeem the property, and (D) a statement that failure to answer or redeem the property within the time allowed may result in a judgment foreclosing the right of redemption.

---

the court's final judgment, which was issued the day after the notice's date of February 10, 2009.

Finally, we have TP 14–840, which applies the same contents requirements to the court's order of publication:

> The property shall be described in the order of publication as the property is described on the collector's certificate of tax sale. The order of publication shall warn any person that has or claims to have an interest in the property to answer the complaint or to redeem the property on or before the date named in the order of publication and in case of failure to appear, answer, or redeem the property a judgment will be entered that forecloses all rights of redemption in the property.

Importantly, we see from these passages that an order of publication under TP 14–840 satisfies the content requirements of both Rules 14–502(b)(3) and 2–122(c) with only two exceptions: Rule 2–122 specifically requires a case caption, and a Rule 14–840 order of publication is signed by a judge rather than the court clerk.

The Maryland Code and Rules also set forth parallel manners of substitute service. First, an order that adopts the contents suggested by TP § 14–840—as in this case—requires the complainant to insert notice in a newspaper of general circulation in the relevant county—here, it was Baltimore City—once a week for 3 successive weeks.[8] Second, the complainant must "cause a copy of the order of publication to be mailed by first-class mail or certified mail, postage pre-

---

8. TP § 14–840 provides that the order of publication "shall be in substantially the following form:"

Order of Publication

"The object of this proceeding is to secure the foreclosure of all rights of redemption in the following property ...... in the ......, sold by the Collector of Taxes for the ...... of ...... and the State of Maryland to the plaintiff in this proceeding:

(Here insert description of property in substantially the same form as the description appearing on the Collector's certificate of tax sale.)

The complaint states, among other things, that the amounts necessary for redemption have not been paid.

It is thereupon this ...... day of ......, 20 .., by the Circuit Court for ......, Ordered, That notice be given by the insertion of a copy of this order in some newspaper having a general circulation in ......

paid," to each defendant's last known address.[9] TP § 14–839(a)(4). Third, notice must be posted in a conspicuous place at the property. Rule 14–503(c); TP § 14–836(b)(6) ("Further notice of the proceeding shall be required by posting of the property in accordance with applicable Maryland Rules of Procedure.").

Turning to Rule 2–122, we find parallel means of substitute service. Under that rule, notice must be mailed to appellant's last known address, 2–122(a), and *either* published in a newspaper for a time period identical to that above, 2–122(a)(2), *or* posted at the property, 2–122(a)(3).[10]

Finally, the two strands enact similar time limits. So long as the complainant satisfies the court's prompt order of publi-

___

once a week for 3 successive weeks, warning all persons interested in the property to appear in this Court by the . . . . . . day of . . . . . ., 20 . ., and redeem the property . . . . . . and answer the complaint or thereafter a final judgment will be entered foreclosing all rights of redemption in the property, and vesting in the plaintiff a title, free and clear of all encumbrances.".

9. Per the explicit language and construction of TP § 14–839(a), the "last known address" is that found 1) in any records examined as part of the title examination, 2) the tax rolls of the collector who made the sale, as to the property described in the complaint; or 3) any other address that is known to the plaintiff or the attorney filing the complaint. A complainant need not consult any other sources to discover the defendant's address, unless those three sources create constructive knowledge of a "correct" address. *Id.*; *St. George Antiochian Orthodox Christian Church v. Aggarwal,* 326 Md. 90, 100–04, 603 A.2d 484 (1992) (where information revealed by a search pursuant to TP § 14–839 made it highly probable that the complainant could obtain the defendant's correct address with a "minimum of effort," the correct address was "known" to the complainant within the meaning of TP § 14–839(a)).

10. Rule 2–122(a)(1) also allows—in addition to mailing and in the alternative to publication and posting at the property—"the posting of the notice by the sheriff at the courthouse door or on a bulletin board within its immediate vicinity[.]" Because all tax sale foreclosure cases require posting at the property, per Rule 14–503(c), we need not consider the operation of this alternative provision.

We also note that, in addition to some satisfactory combination of mailed, posted, and published notice, Rule 2–122(a) provides that the court "may order any other means of notice that it deems appropriate in the circumstances."

cation[11] and the time for mailing notice under TP § 14–839(a)(4) and posting under Rule 14–503(c), then it will have fulfilled Rule 2–122(b)'s requirement that service be effected "at least 30 days before the date by which a response to the complaint is to be filed."[12]

Despite the fact that the forgoing provisions are generally consistent in their required content, as well as in their time and manner of service, they contain certain conflicts that lie at the heart of this case.

## B. *Substitute Service in Tax Sale Foreclosures*

■ Appellant first argues that the court's judgment of foreclosure should have been reopened because appellee failed to comply with the affidavit and order provisions of Rule 2–122. As to jurisdiction, it is established as a matter of law that such an affidavit is not required by due process and thus is unnecessary for the court to exercise jurisdiction. *Jannenga*, 243 Md. at 4, 220 A.2d 89 (citing *Hauver v. Dorsey*, 228 Md. 499, 180 A.2d 475 (1962)) ("the mere failure to file an affidavit or other evidence of compliance with the requirements of [former] Maryland Rule 105 is not a jurisdictional defect such as would void a decree setting aside an owner's

---

**11.** There is no time specified by TP § 14–840, but the order in this case provided that publication had to be completed on or before January 9, 2009, more than thirty days before appellant's redemption right was foreclosed by judgment.

**12.** TP § 14–839(a)(6) provides that a final judgment may not be entered before the last of:

(i) where actual service is made on the defendant, the passage of the time specified in the summons issued by the court;

(ii) the actual time specified in the order of publication; or

(iii) 33 days after the date of mailing the copy of the order of publication under paragraph (4) of this subsection.

Under TP § 14–840, the date of foreclosure may not be less than 60 days from the date of the order of publication, placing 14–839(a)(6)(ii) well within the bounds of Rule 2–122(b). Similarly, the time set forth in 14–839(a)(6)(iii) is, by its terms, compliant with Rule 2–122(b). (Subpart 14–839(a)(6)(i) is not relevant because Rule 2–122 does not contemplate actual notice.)

rights of redemption."). Nor is there any authority or reason to hold that service lacking only an *order* would violate due process or deprive the court of jurisdiction.[13] Thus, appellant can prevail only if appellee's failure to file an affidavit or obtain a court order for substitute service worked a constructive fraud on him. For the reasons that follow, we hold that, because appellee filed an affidavit showing that reasonable and good faith efforts to serve appellant at his last known address failed, and because appellee posted, mailed, and published notice pursuant to the default notice provisions of TP §§ 14–836, 14–839, 14–840, and Rule 14–503(c), appellant was served "in accordance with Rule 2–122" and thus he was not constructively defrauded.

Rule 14–503 provides that, if the complaint includes defendants whose whereabouts are unknown, then the "the notice filed in accordance with Rule 14–502(b)(3), after being issued and signed by the clerk, shall be served in accordance with Rule 2–122." [14] Turning to Rule 2–122(a), however, we are instructed that "the court may order" substitute service thereunder "when the plaintiff has shown by affidavit that the whereabouts of the defendant are unknown and that reasonable efforts have been made in good faith to locate the defendant."

The problem with the construction of these provisions defies simple explanation, but we shall do our best to explain them and why they lead to our conclusion.

First, Rule 14–503 presupposes that the defendant's whereabouts are either known or unknown to the complainant, but then directs the complainant to follow a rule that is conditioned upon filing an affidavit and obtaining an order of court to establish that presupposed fact. It is possible that the superseding and mandatory substitute notice provisions of the Property Tax Article, if properly effected, obviate the need for

---

**13.** It appears that this would be harmless error, at worst.

**14.** Rule 14–503(b) also provides for substitute service under Rule 2–122 if the complaint includes unknown owners or unnamed interested parties.

an affidavit or order under Rules 14–503 and 2–122.[15] We need not resolve that issue, however, because appellee's affidavit of compliance showed that reasonable and good faith efforts to serve appellant personally had failed and—as explained more fully, below—that his whereabouts were thus unknown.

We have concluded that appellee filed an affidavit sufficient for purposes of Rule 2–122. We still must ask whether appellee fully complied with 14–503(b) by serving appellant "in accordance with Rule 2–122." We earlier stated that due process and jurisdiction do not strictly require an order of substitute process, but our present concern is constructive fraud, and we are convinced that there was none for two

---

**15.** Property Tax Article § 14–839 states the legislature's position on its supremacy:

(b) *Notice to defendants—Declared reasonable and sufficient.*—The provisions of this section as to notice to persons who may have an interest in property sold for nonpayment of taxes, coupled with the order of publication and the other publicity and notices as ordinarily accompanies the sale of such property, as well as the knowledge of the taxes and the consequences for nonpayment of the taxes is declared:

(1) to be reasonable and sufficient under all of the circumstances involved, and necessary in light of the compelling need for the prompt collection of taxes; and

(2) to supersede any other requirement in other cases or civil causes generally.

We also note that § 14–840 declares, in part:

When the order of publication is issued and published, any person that has any right, title, interest, claim, lien, or equity of redemption in the property is bound by the judgment of the court that may be passed in the case as if the person were personally served with process.

It appears, however, that this last declaration is unconstitutional under *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 318, 70 S.Ct. 652, 94 L.Ed. 865 (U.S.1950) ("Where the names and post-office addresses of those affected by a proceeding are at hand, the reasons disappear for resort to means less likely than the mails to apprise them of its pendency."). *See also Griffin,* 403 Md. at 210, 941 A.2d 475 (the holding in *Sanchez v. James,* 209 Md. 266, 270, 120 A.2d 836 (1956), that "the Legislature may validly provide that persons having an interest in real properly sold at a tax sale shall be given notice by publication, and that personal service of process in such proceedings is unnecessary" is "clearly no longer good law and probably was incorrect at the time it was decided.").

reasons. First, appellee filed a sufficient affidavit and so it only failed to *request* an order under Rule 2–122, an order that would have been proper because appellant's whereabouts were unknown and—as we hold, below—reasonable good faith efforts to serve his last known address had failed. Furthermore, had the order issued, it merely would have called for substitute service that was not only mandatory under TP §§ 14–836, 14–839, 14–840, and Rule 14–503(c) but actually effected by appellee.[16] Lacking only an immaterial order, appellee met all the time, content, and manner requirements of Rule 2–122 and thus served appellant "in accordance with Rule 2–122," as required by Rule 14–503(b).

### C. *Knowledge, Whereabouts, and Reasonable and Good Faith Efforts*

■ Regardless of whether appellee needed an affidavit or order of court, appellant argues that substitute service pursuant to Rules 14–503(b) and 2–122 was improper—and thus violated due process or amounted to constructive fraud—because appellee had actual knowledge of his correct residential address.

We reject appellant's argument for the simple reason that a complainant's knowledge of even a "correct" residential address does not necessarily mean that the defendant's "whereabouts" are known. These concepts are prone to misunder-

---

**16.** We note that Rule 14–503(b) specifically states that the complainant must serve the notice filed under Rule 14–502(b)(3), issued and signed by the clerk, which in a strict sense is not the order of publication. We are convinced, however, that the order of publication in this case suffices, as it included not only the content required by Rule 2–122(c), but the description of the property as required by Rule 14–502(b)(3). And while the order of publication was not signed by the clerk, it was signed by a judge. If we are to construe these rules, per Rule 1–201(a), "to secure simplicity in procedure, fairness in administration, and elimination of unjustifiable expense and delay," then Rule 14–503(b) is satisfied by service of a valid order of publication under TP § 14–840. We also point out that the various notices in this case were effected within the time limits of Rule 2–122, but that is not a strictly necessary result of the default Property Tax Article provisions and Rule 14–503(c); for that to be so, the court must adopt the suggested language of TP § 14–840 and add a clause ordering prompt publication.

standing because the nature of constructive knowledge makes "knowledge" of a specific fact—such as "whereabouts"—dependent on the party's general knowledge of the circumstances. *St. George Antiochian Orthodox Christian Church v. Aggarwal,* 326 Md. 90, 100–04, 603 A.2d 484 (1992); *see* note 9, above. Thus, discovery of a defendant's address will initially mean that the defendant's "whereabouts" are known, but when reasonable and good faith attempts to serve process at that address fail—and if no other facts provide constructive knowledge of a reasonable way to serve the defendant—then the only valid conclusion can be that the defendant's "whereabouts" revert to being unknown.[17] Were that not so, then a party who knows of a correct address could never proceed with substituted process pursuant to Rule 2–122 in any reasonable manner. *See Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 313–14, 70 S.Ct. 652, 94 L.Ed. 865 (1950) ("A construction of the Due Process Clause which would place impossible or impractical obstacles in the way could not be justified."). In addition to the general scheme of Rules 2–121 and 2–122, which provides substitute service as—obviously—an *alternative* to personal service, our logic is bolstered by the fact that Rule 2–122(a) refers to the "last known address" of a defendant whose "whereabouts are unknown," implying that failure of service can distinguish an "address" from "whereabouts."

In sum, we hold that while a "correct" or otherwise "valid" address initially gives a complaining party constructive knowledge of a defendant's "whereabouts," failure of reasonable and good faith efforts to serve process at that address nullifies that constructive knowledge.[18]

---

**17.** We do not need to determine how knowledge is affected by evasion of service as opposed to the mere failure of good faith efforts. *See* Rule 2–121(b) and (c). For obvious reasons, appellant has not argued that he evaded service and that appellee should have proceeded under Rule 2–121(b).

**18.** Although we do not reach this issue, failure to locate an address pursuant to the limited search provisions of § 14–839(a)(1) would also render a party's whereabouts unknown for purposes of Rule 14–503.

We conclude our discussion with the only remaining part of appellant's argument, which is that appellee's efforts to personally serve appellant were not reasonable and made in good faith. Appellee presented affidavits that its agents attempted to serve appellant by personal delivery on several occasions and, when those efforts failed, by telephone, mail, and written note. Appellant has presented no authority holding that similar actions are inadequate, and we are not convinced by his argument that the law required anything more of appellee. *See St. George Antiochian Orthodox Christian Church v. Aggarwal*, 83 Md.App. 599, 612, 576 A.2d 224 (1990), *rev'd on other grounds*, 326 Md. 90, 603 A.2d 484 (1992) ("We hold that the notice provisions of the statute are constitutional whether actual service is made, so long as substantial adherence to the statute's requirements are met.").[19]

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

---

19. Appellant attacked appellee's service of process in a piecemeal fashion, which is a natural strategy given the complex structure of any notice scheme. Therefore, our final note is that, regardless of whether appellee violated some particular provision of the rules or code giving rise to constructive fraud, and regardless of whether the actual notice he received was inadequate, appellant received due process under the totality of the circumstances. Appellee reasonably and in good faith attempted personal service at appellant's residence and also published, posted, and mailed notice of the proceedings, and appellant was charged by legislative decree with "knowledge of the taxes and the consequences for nonpayment of the taxes." *See* TP § 14-839(b).